**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO.: 16-CR-65** |
| | ) | |
| **GERARDO GONZALEZ-VALENCIA,** | ) | |
| also known as "Lalo," "Flaco," | ) | |
| "Silver," "Silverio," "Eduardo," and | ) | |
| "Laline," | ) | |
| | ) | |
| **Defendant.** | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO.: 16-CR-192** |
| | ) | |
| **JOSE GONZALEZ-VALENCIA,** | ) | |
| also known as "Jafett Arias-Becerra," | ) | |
| "Chepa," "Camaron," "Santy," | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**GOVERNMENT'S MOTION FOR JOINDER OF DEFENDANTS FOR TRIAL**

The United States moves pursuant to Rule 13 of the Federal Rules of Criminal Procedure for an order joining defendants Gerardo Gonzalez-Valencia and Jose Gonzalez-Valencia (the "Defendants") for the purposes of trial on February 7, 2022. Defendants are both charged with participating in the same conspiracy, and joinder of the trials would save the Court significant time and would promote the efficient use of judicial resources, due to a significant overlap in evidence and witnesses between the two trials.

## I.     BACKGROUND

The Narcotic and Dangerous Drug Section and the Drug Enforcement Administration have conducted an extensive investigation into the operations of a large-scale drug trafficking

1

organization based in Jalisco, Mexico, known as "Los Cuinis," which is led by several of the Gonzalez-Valencia siblings, including the Defendants Gerardo Gonzalez-Valencia and Jose Gonzalez-Valencia, as well as their brother Abigael Gonzalez-Valencia (who is indicted in this district and awaiting extradition to the United States). The Los Cuinis DTO is aligned with the Cartel de Jalisco Nueva Generacion, another drug trafficking organization based in Jalisco, Mexico, that is led by Nemesio Osguera-Cervantes, also known as "Mencho," who is married to Rosalinda Gonzalez-Valencia (Gerardo, Jose, and Abigael's sister). Mencho is indicted in this district and is a fugitive in Mexico.

On April 19, 2016, a federal grand jury sitting in the District of Columbia returned an indictment charging the Gerardo Gonzalez-Valencia with conspiracy to distribute five kilograms or more of cocaine and five hundred grams or more of methamphetamine, knowing and intending that such substances would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 963, and 960 and 18 U.S.C. § 2. *See* No. 16-CR-65, Docket No. 1. The time period of the charged conspiracy was from January 2003 up to and including the date of the indictment. Gerardo Gonzalez-Valencia was extradited to the United States on May 14, 2020. His trial is currently scheduled to begin February 7, 2022.[1]

---

[1] The government is prepared to proceed to trial on February 7, 2022. However, if one or both Defendants request additional time to prepare for trial in light of the cases being joined, it does not oppose any such request. The Speedy Trial Act provides for the exclusion of time for "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run…." 18 U.S.C. § 3161(h)(6). Defendant Gerardo Gonzalez-Valencia's Speedy Trial Act clock has not yet run, having been continued with his consent through the currently-scheduled trial date. *See* Minute Entry, May 21, 2021, Case No. 16-cr-65. And the efficiency to be gained for the Court and the government in a joint trial is significant where, as detailed herein, the evidence for each case overlaps extensively.

On October 26, 2016, a federal grand jury sitting in the District of Columbia returned an indictment charging the Jose Gonzalez-Valencia with conspiracy to distribute five kilograms or more of cocaine, knowing and intending that such substances would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 963, and 960 and 18 U.S.C. § 2. *See* No. 16-CR-192, Docket No. 1. The time period of the charged conspiracy was from in and around 2006 up to and including the date of the indictment. Jose Gonzalez-Valencia was extradited to the United States on November 10, 2021.

The government conducted a judicially-authorized Title III wiretap of BlackBerry Messenger ("BBM") devices between 2013 and 2014. In the course of that BBM wiretap investigation, the government identified various BBM users, including both of the Defendants, the Defendants' brother Abigael Gonzalez Valencia; the Defendants' brother-in-law, Nemesio Ruben Oseguera Cervantes; and others. The BBM wiretap shows the Defendants and various co-conspirators involved in moving, shipping, producing, and selling cocaine. Because this is the same wiretap for both Defendants, the foundation needed to be laid to introduce it into evidence is the same for both Defendants.

The government also intends to introduce into evidence the seizure of approximately 280 kilograms of cocaine that was recovered by the U.S. Coast Guard on August 21, 2007, from the area around a semi-submersible vessel that sank below the water in the Eastern Pacific Ocean. *See* No. 16-CR-65, Docket No. 48, p. 1-3. Cooperating witnesses familiar with the semi-submersible shipment are expected to testify at trial that both Defendants were major investors in this shipment of cocaine. The U.S. Coast Guard, U.S. Navy, DEA, and forensic chemist witnesses that will testify about the seizure operation and the chain of custody and testing of the cocaine will be the same for both Defendants.

Additionally, the government has begun to prepare a number of potential trial witnesses (cooperating witnesses, confidential sources, and others) in connection with the scheduled trial of Gerardo Gonzalez-Valencia, and nearly all of these potential witnesses would testify about their personal knowledge of *both* Defendants' involvement in the conspiracy and their leadership roles in the Los Cuinis DTO.  Most of the witnesses, in other words, would be the same if the Court were to hold two separate trials of the Defendants.

## II.     LEGAL STANDARD & ANALYSIS

Federal Rule of Criminal Procedure 13 provides that a district court may "order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information." Therefore, a Court may consolidate indictments for trial if the offenses could be joined in a single indictment under Rule 8.  *United States v. Briscoe*, 798 F. Supp. 28, 31 (D.D.C. 1992).  Rule 8(b) provides the standard for joinder of defendants, and states that "[t]wo or more defendants may be charged in the same indictment if they allegedly participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  Fed. R. Crm. P. 8(b).

"In a conspiracy, co-conspirators engage in acts or transactions that form a 'series of acts or transactions' as required under Rule 8(b)."  *United States v. Simmons*, 431 F. Supp. 2d 38, 66 (D.D.C. 2006), *aff'd sub nom. United States v. McGill*, 815 F.3d 846 (D.C. Cir. 2016) (holding that joinder of defendants was proper where all defendants were charged as participants in a narcotics conspiracy and RICO conspiracy and each defendant was involved in the distribution of narcotics); *see also United States v. Halliman*, 923 F.2d 873, 883 (D.C. Cir. 1991) (holding joinder of defendants is proper where the defendants' "offenses arose out of their participation in the same drug distribution scheme.").  In fact, joint trials of defendants are favored in conspiracy cases.

*United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir. 1999); *United States v. Gray*, 292 F. Supp. 2d 71, 86 (2003). "The joinder presumption is especially strong where, as here, the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve two defendants who are charged, *inter alia,* with participating in the same illegal acts." *United States v. Ford*, 870 F.2d 729, 731 (D.C. Cir. 1989) (quoting *United States v. Sutton*, 801 F.2d 1346, 1365 (1986)) (international quotation marks omitted); *see also United States v. Mardian*, 546 F.2d 973, 979 (D.C. Cir. 1976) ("[T]here are indeed strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors").

The preference for joint trials can be overcome if the defendants can demonstrate "substantial prejudice," which is defined as a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (*quoted in Simmons*, 431 F. Supp. 2d at 66).

The Defendants are charged with participating in the same conspiracy to distribute narcotics for importation into the United States for over a decade (from 2006 through April 2016).[2]  Each is alleged to have conspired with others to distribute five kilograms or more of cocaine, a Schedule II controlled substance, an amount that is attributable to each of the Defendants as a result of their conduct and the conduct of other co-conspirators that was

---

[2] As noted above, the charged conspiracy against Gerardo Gonzalez-Valencia extends back three years earlier than that charged against Jose Gonzalez-Valencia.  The government proffers that the vast majority of its evidence against Gerardo Gonzalez-Valencia comes after 2006, when the two were members of the same ongoing conspiracy.

reasonably foreseeable to them.[3]  Both trials would require presentation of much the same evidence, including the testimony of most of the same witnesses, and the government intends to produce all of the same Rule 16 discovery to Jose Gonzalez-Valencia that it has already produced to Gerardo Gonzalez-Valencia.  Furthermore, the Defendants are unable to meet the high burden of establishing prejudice from a joint trial.

### III.    CONCLUSION

In light of the substantial overlapping evidence involved in both cases, joinder for trial would conserve judicial resource and would not prejudice either defendant.  Therefore, the Government respectfully requests that the Court grant its motion for joinder.

Respectfully submitted this 12th day of November, 2021.

Arthur G. Wyatt, Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

By:    ___/s/_____
Kate Naseef, Trial Attorney
Kaitlin Sahni, Trial Attorney
Brett Reynolds, Trial Attorney
United States Department of Justice
Narcotic and Dangerous Drug Section
145 N Street, Northeast
East Wing, Second Floor
Washington, D.C. 20530
Kate.Naseef@usdoj.gov
(202) 514-0917

---

[3] As was noted in the Government's Opposition to Defendant's Motion to Dismiss, No. 16-CR-65, Docket No. 47 at 2, the Government has notified Gerardo Gonzalez-Valencia that it does not intend to proceed on the methamphetamine aspect of the single count of the indictment and has agreed to promptly notify defense counsel if it decides to pursue the methamphetamine portion of the charge.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via ECF to counsel of record for the

Defendants, this 12th day of November, 2021.


By:   _____/s/_____
      Kate Naseef
      Trial Attorney
      Narcotic and Dangerous Drug Section
      Criminal Division
      U.S. Department of Justice